**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | |
|---|---|
| Jason Hanson, et al., )<br>   )<br>          Plaintiffs, )<br>   )<br>vs. )<br>   )<br>James Parisien, et al., )<br>   )<br>          Defendants. )<br>   ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 3:19-cv-00270 |

Before the Court is the Defendants' motion to dismiss filed on January 31, 2020. Doc. No. 16. The Plaintiffs' complaint requests declaratory and injunctive relief barring the Defendants from enforcing a fee levied against them under the Turtle Mountain Band of Chippewa Indians Tribal Employment Rights Ordinance ("TERO" or "ordinance"). In retort, the Defendants seek to dismiss the complaint for lack of jurisdiction or, alternatively, failure to state a claim. On February 14, 2020, the Plaintiffs responded in opposition to the motion. Doc. No. 18. The Defendants filed a reply on February 28, 2020. Doc. No. 19. For the reasons below, the motion is granted.

**I.      BACKGROUND**

This dispute emanates from a construction project for a pre-kindergarten and wrestling facility for Belcourt Public School District # 7 ("School District"). Doc. No. 1, ¶ 1. The facility is located on trust land within the exterior boundaries of the Turtle Mountain Indian Reservation ("Reservation"). Id. The Plaintiffs contracted to perform metal work for the project and now challenge the imposition of TERO fees on the contract. Id. An introduction of the parties is followed by the factual background and procedural history.

A.     **Introduction of Parties**

Both Plaintiffs are non-Indian. Id. ¶ 5. Dakota Metal Fabrication ("Dakota Metal") is a Manvel, North Dakota, metal fabrication and welding contractor. Id. Jason Hanson owns the company. Id.

The Defendants consist of one individual and four tribal government entities. Sued in his official capacity, James Parisien is the Director of the Turtle Mountain Tribal Employment Rights Office ("TERO Office"). Id. ¶ 6. The complaint also names the TERO Office, the Turtle Mountain Band of Chippewa Indians ("Tribe"), the Turtle Mountain Tribal Court, and the Turtle Mountain Court of Appeals as Defendants. Id. ¶¶ 6-7.

B.     **Factual Background**

A brief overview of TERO serves as a useful starting point. The ordinance's primary purpose is "to promote employment opportunities for Indians and business opportunities for Indian firms and contractors." Doc. No. 16-4, § 32.0102. Tasked with carrying out that objective, the Turtle Mountain Chippewa Tribal Employment Rights Commission ("Commission") administers a wide-ranging employment rights program for the benefit of tribal members and their families. Id. §§ 32.0306, 32.0307. To sustain the program financially, TERO authorizes a fee assessment on certain businesses operating within the Reservation, including construction contractors. Id. § 32.0501. When awarded a contract, a contractor must remit a fee equal to 3% of the total contract amount to the TERO Office. Id.

The ordinance permits an employer to file an administrative complaint if aggrieved by an action of the TERO Office Director or the Commission. Id. § 32.0704. The Director then investigates the complaint and attempts to procure an informal resolution. Id. If that fails, the

employer is entitled to a hearing before the Commission. Id. Any party dissatisfied with a hearing decision may appeal directly to the Turtle Mountain Court of Appeals. Id. § 32.0901. The ordinance disavows any waiver of tribal sovereign immunity. Id. § 32.0604.

Shifting from TERO in the abstract, the present controversy took form in 2018. The pre-kindergarten and wrestling facility project was a joint venture between the School District and the Tribe, with ultimate ownership ascribed to the School District. Doc. No. 1, ¶ 15. The School District occupies the facility pursuant to a memorandum of agreement with the Tribe, as approved by the Bureau of Indian Affairs. Id. The School District is not a tribal entity but rather a political subdivision of the State of North Dakota. Id. ¶ 5 n.1.

At first, the School District solicited bids for the project with the condition that TERO would apply. Doc. No. 1-1, ¶ 2. Dakota Metal submitted a bid that factored in the anticipated TERO fees. See id. But when all the bids came in over budget, the School District advertised for bids anew—this time purportedly without requiring TERO compliance. Id. ¶¶ 3-4. Before the due date for the second round of bids, the School District held a pre-construction meeting. Id. ¶ 5. A representative from Dakota Metal attended the meeting. Id. Parisien attended, too, and warned contractors that despite the omission from the School District's advertisement, TERO would apply to contracts awarded for the project. Id.

Dakota Metal renewed its bid without including TERO fees. Id. ¶¶ 6-7. Justifying that decision, Dakota Metal relied on a letter from the School District's attorney. Id. ¶ 7. The letter explained that TERO did not apply to the School District itself. Id. Still, the letter advised contractors to consult with their own attorneys to determine whether the ordinance applied to them. Id. With the TERO fees excluded, the School District accepted Dakota Metal's second bid. Id. ¶

3

8. Work commenced on the project soon after. Id. Then on January 16, 2018, the TERO Office assessed a $44,640 fee on Dakota Metal. Id. ¶ 9; Doc. No. 1-4, p. 1. Dakota Metal refused to pay the fee. Doc. No. 1-1, ¶ 10.

### C.      Procedural History

Dakota Metal instituted an action against Parisien, the TERO Office, and the Tribe in the Turtle Mountain Tribal Court on August 2, 2018. See Doc. No. 16-3. The petition began by asserting that the tribal courts possessed subject matter jurisdiction, relying on (among other authorities) the United States Supreme Court's decision in Montana v. United States, 450 U.S. 544 (1981). Id. ¶ 1. At odds with that assertion, the petition went on to challenge the Tribe and the TERO Office's authority to regulate or tax the School District's activities, as well as the tribal courts' jurisdiction to adjudicate disputes stemming from those activities. Id. ¶¶ 13-16.

The Turtle Mountain Tribal Court rendered a merits decision in Dakota Metal's favor on June 26, 2019. Doc. No. 1-1. In the decision, the court first determined that the Tribe held authority to regulate and adjudicate "the employment practices of non-Indians performing contract services within the exterior boundaries of the Reservation." Id. ¶ 11. The court explained that TERO applied with equal force to contractors entering into agreements with state entities on the Reservation. Id. ¶ 13. Even so, the court determined that equitable considerations counseled against the imposition of TERO fees, concluding that Dakota Metal had reasonably relied on the School District's representations that the fees would not apply when submitting its second bid. Id. ¶ 15. The court accordingly exempted Dakota Metal from paying the 3% fee but ordered compliance with other applicable TERO regulations for the duration of the project. Id. ¶ 16.

4

Parisien and the tribal entities appealed. In a November 15, 2019 order, the Turtle Mountain Court of Appeals reversed the decision below. See Doc. No. 1-2. The appellate court initially expressed general agreement with the trial court's conclusion that the Tribe possessed the necessary authority to compel Dakota Metal's compliance with TERO. Id. at 1-2. That notwithstanding, the appellate court found that the trial court erred because it could not "assume the administrative functions of TERO and rule that fees and regulations apply to one situation and not the other." Id. at 2. Noting the availability of administrative procedures through TERO, the appellate court remanded the matter to the Commission for further proceedings. Id. at 3.

Instead of pursuing an administrative complaint with the TERO Office, however, the Plaintiffs filed this lawsuit on December 6, 2019. See Doc. No. 1. Charging a dearth of tribal authority, the Plaintiffs seek declaratory and injunctive relief to prevent the Defendants from undertaking future action to enforce the fees. The Defendants filed this motion to dismiss in response. Doc. No. 16.

## II.   DISCUSSION

The Defendants' motion is twofold. First, the motion challenges the Court's ability to decide the merits, asserting that the cloak of sovereign immunity protects each Defendant from suit, and even if not, that the Plaintiffs impermissibly failed to exhaust available tribal judicial and administrative remedies. Second, the motion contends that, if the Court can reach the merits, the complaint fails to plausibly plead a lack of tribal authority to impose the contested TERO fees.

### A.   Sovereign Immunity

The Court lacks jurisdiction over all the Defendants—with the exception of Parisien—on the basis of sovereign immunity. "Indian tribes are 'domestic dependent nations' that exercise

5

inherent sovereign authority over their members and territories." Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) (quoting Cherokee Nation v. Georgia, 30 U.S. 1, 17 (1831)).  "Among the core aspects of sovereignty that tribes possess . . . is the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 787 (2014) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)).  "As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998) (citations omitted).  A waiver "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo, 436 U.S. at 58 (citations and internal quotation marks omitted).  "[A]n arm or instrumentality of the [tribe] generally enjoys the same immunity as the sovereign itself." Lewis v. Clarke, 581 U.S. ___, 137 S. Ct. 1285, 1291 (2017) (citing Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997)).

Applying these principles, sovereign immunity shields the four tribal government entities.  In addition to the Tribe itself, sovereign immunity extends to tribal administrative agencies and tribal courts, including for suits seeking declaratory and injunctive relief. See Fort Yates Pub. Sch. Dist. # 4 v. Murphy ex rel. C.M.B., 786 F.3d 662, 670-71 (8th Cir. 2015).  Nothing indicates that Congress abrogated the Tribe's sovereign immunity when enforcing TERO.  And the Plaintiffs do not plead waiver at all, much less identify a clear and unequivocal expression of consent to suit.  To the contrary, TERO overtly disclaims such a waiver.  Doc. No. 16-4, § 32.0604.  The TERO Office, the Tribe, the Turtle Mountain Tribal Court, and the Turtle Mountain Court of Appeals therefore retain immunity from suit.  The Court lacks jurisdiction over the claims against them as a result.  See id. at 670 (stating that sovereign immunity is a threshold jurisdictional limitation).

But the same cannot be said for Parisien. To be sure, sovereign immunity "extends to tribal officials who act within the scope of the tribe's lawful authority." Kodiak Oil & Gas (USA) Inc. v. Burr, 932 F.3d 1125, 1131 (8th Cir. 2019) (citing Baker Elec. Co-op., Inc. v. Chaske, 28 F.3d 1466, 1471 (8th Cir. 1994)). Like their federal and state counterparts, though, tribal officials remain subject to suit under the longstanding sovereign immunity exception articulated in Ex parte Young, 209 U.S. 123 (1908). See Bay Mills Indian Cmty., 572 U.S. at 796. That exception authorizes "a private party [to] sue a [tribal] officer in his official capacity to enjoin a prospective action that would violate federal law." 281 Care Comm. v. Arneson, 638 F.3d 621, 632 (8th Cir. 2011). Determining if the Ex parte Young exception applies calls for a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (cleaned up). The sued official must also possess "some connection to the enforcement of the challenged laws." Calzone v. Hawley, 866 F.3d 866, 869 (8th Cir. 2019) (citing Ex parte Young, 209 U.S. at 157). A plaintiff need not mention Ex parte Young by name to properly invoke the exception, and courts focus instead on the factual allegations in the complaint. See Minn. RFL Republican Farmer Labor Caucus v. Freeman, File No. 19-cv-1949 (ECT/DTS), 2020 WL 1333154, at *3 n.4 (D. Minn. Mar. 23, 2020).

The complaint here alleges that Parisien, in his capacity as Director, is attempting to impose TERO fees on the Plaintiffs beyond the bounds of the Tribe's regulatory jurisdiction. If so, that constitutes on ongoing transgression of federal law. See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 853 (1985) (explaining that "federal law defines the outer boundaries of an Indian tribe's power over non-Indians"). Further, the relief sought in the

7

complaint is to prospectively prevent Parisien from enforcing the contested TERO fees. In the words of the Eighth Circuit Court of Appeals, "where a tribal official is giving effect to the unlawful exercise of jurisdiction 'in a manner that allegedly injures a plaintiff . . . , an action' for injunctive or declaratory relief is available against the tribal official." Kodiak Oil & Gas, 932 F.3d at 1132 (quoting McDaniel v. Precythe, 897 F.3d 946, 952 (8th Cir. 2018)). The Plaintiffs' complaint avers just that. Thus, sovereign immunity does not preclude the claims for declaratory and injunctive relief against Parisien.

### B. Tribal Remedy Exhaustion

With that established, the inquiry now becomes whether the Plaintiffs adequately exhausted available tribal remedies before turning to federal court for relief. The Defendants advance a failure-to-exhaust theory on two fronts. First, they assert that the Turtle Mountain Tribal Court and the Turtle Mountain Court of Appeals never had an opportunity to ascertain their own jurisdiction, highlighting Dakota Metal's statement in its original petition that the tribal courts held subject matter jurisdiction to adjudicate the disputed TERO fees. Second, they contend that the Plaintiffs failed to exhaust administrative remedies available through TERO. Without addressing whether the reviewing tribal courts had an adequate opportunity to determine their own jurisdiction, the Court concludes that the failure to pursue TERO-specific administrative remedies renders the Plaintiffs' claims in federal court fatally premature.

Tribal exhaustion jurisprudence applies equally to judicial and administrative remedies. See Burlington N. R.R. Co. v. Crow Tribal Council, 940 F.2d 1239, 1247 (9th Cir. 1991); Janis v. Wilson, 521 F.2d 724, 726-27 (8th Cir. 1975); Takes Gun v. Crow Tribe of Indians, 448 F. Supp. 1222, 1226-27 (D. Mont. 1978). Although creating a prudential limitation rather than a

jurisdictional bar, tribal remedy "[e]xhaustion is mandatory . . . when a case fits within the policy." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003) (citations omitted). Four distinct rationales underpin the tribal exhaustion doctrine. See Nat'l Farmers Union, 471 U.S. at 856-57. Namely, exhaustion encourages tribal self-government, facilitates the development of a full record before adjudication in federal court, affords tribal forums the ability to explain their bases for jurisdiction to the parties, and lends the benefit of local expertise in tribal matters to subsequent judicial review.[1] See Duncan Energy Co. v. Three Affiliated Tribes of Fort Berthold Reservation, 27 F.3d 1294, 1299-1300 (8th Cir. 1994). More broadly, "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Reiter v. Cooper, 507 U.S. 258, 269 (1993) (citing Heckler v. Ringer, 466 U.S. 602, 617, 619 & n.12 (1984); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938)). "It follows that declaratory actions should not be used to circumvent administrative procedures." Burlington N., Inc. v. Chicago & N. W. Transp. Co., 649 F.2d 556, 559 (8th Cir. 1981) (citations omitted).

In this instance, the Plaintiffs indisputably failed to pursue TERO's administrative remedy process. What is more, by filing this lawsuit, they wholly ignored an order from the Turtle Mountain Court of Appeals mandating that they avail themselves of that process. Deciding the merits of the Plaintiffs' federal claims now would require this Court to brush that order aside in kind, spurning any semblance of respect for tribal self-government along the way. A full hearing

---

[1] The reasons supporting tribal exhaustion largely mirror the impetus for requiring exhaustion of administrative remedies generally. Compare Nat'l Farmers Union, 471 U.S. at 856-57, with Weinberger v. Salfi, 422 U.S. 749, 765 (1975).

before the Commission[2] and potential ensuing appeal would also facilitate the development of a more adequate record on the weighty tribal jurisdiction issues. Moreover, the Commission's expertise on the limits of tribal authority to impose the fees at issue—as well as its unique ability to grant case-specific exceptions from those fees—should be brought to bear before reaching any decision in this forum. As a final note, the Plaintiffs have not argued, and the Court does not find, that any exceptions to the tribal exhaustion doctrine apply. See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 19 n.12 (1987) (citation and internal quotation marks omitted) (stating that exhaustion is not required when "an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of adequate opportunity to challenge [tribal] jurisdiction"). Accordingly, the Court will abstain from deciding the merits and dismiss this matter pending exhaustion of administrative remedies available through TERO and any accompanying tribal judicial review. See id. at 16 n.8 (noting that tribal exhaustion is analogous to abstention principles applicable when concurrent jurisdiction exists in state and federal courts).

## III.     CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Defendants' motion to dismiss (Doc. No. 16) is **GRANTED**. The

---

[2] By its terms, TERO requires an aggrieved employer to file an administrative complaint within 30 days of a precipitating incident. Doc. No. 16-4, § 32.0705. Nonetheless, the Court is confident that the Plaintiffs will be afforded a hearing before the TERO Commission because the Defendants (including Parisien and the TERO Office) have asked for such a hearing to occur. If a TERO hearing proves unavailable for any reason, the Plaintiffs may refile this action.

complaint is hereby **DISMISSED WITHOUT PREJUDICE**.  Considering the comprehensive briefing submitted, the motion for hearing (Doc. No. 17) is **DENIED**.

    **IT IS SO ORDERED**.

    **LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated this 20th day of July, 2020.

                                    */s/ Peter D. Welte*
                                    Peter D. Welte, Chief Judge
                                    United States District Court